UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERTRAM SACKS,

        Plaintiff,

v.

OFFICE OF FOREIGN ASSETS CONTROL, UNITED STATES DEPARTMENT OF THE TREASURY, et al.,

        Defendants.

CASE NO. C04-108JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss Plaintiff's complaint. (Dkt. # 8). For the reasons stated below, the court grants Defendants' motion in part and denies it in part. In addition, because there is no further relief to grant to either party, the court dismisses this action.

## II. BACKGROUND

Plaintiff is a member of Voices in the Wilderness ("Voices"), an unincorporated organization that provides humanitarian assistance to Iraqi citizens suffering as a result of the worldwide embargo on trade with Iraq in place since 1990. Although Plaintiff made several trips to Iraq to deliver humanitarian aid, it was a November 1997 trip that is at issue in Plaintiff's current dispute with the Office of Foreign Asset Control ("OFAC").

ORDER – 1

OFAC, an agency of the United States Department of the Treasury, had issued two regulations governing the activities of United States citizens in Iraq. The first, the "Travel Ban," prohibits travel-related expenditures for travel to or within Iraq:

> Except as otherwise authorized, no U.S. person may engage in any transaction relating to travel by any U.S. citizen or permanent resident alien to Iraq. . . . This section prohibits the unauthorized payment by a U.S. person of his or her own travel or living expenses within Iraq.

31 C.F.R. § 575.207. The second regulation, the "Medicine Restriction," prohibits the export of medicine to Iraq except as licensed by OFAC:

> Except as otherwise authorized, no goods . . . may be exported from the United States . . . to any entity operated from Iraq, except donated foodstuffs in humanitarian circumstances, and donated supplies intended strictly for medical purposes, the exportation of which has been specifically licensed pursuant to [other OFAC regulations].

31 C.F.R. § 575.205.

On December 3, 1998, OFAC sent a pre-penalty notice to Mr. Sacks, Voices, and other members of Voices. The only allegation specifically directed to Mr. Sacks was that he had violated the Travel Ban by traveling "to/from/within" Iraq and making incidental payments for living expenses. OFAC also alleged that Voices had violated the Medicine Restriction by importing medical supplies, toys, and other goods into Iraq.

On January 8, 1999, Mr. Sacks offered a written response to the pre-penalty notice in which he admitted to bringing medicine to Iraq. There was no further contact between the parties until May 17, 2002, when OFAC issued a penalty notice fining Plaintiff $10,000 for his violation of the Travel Ban.

OFAC has chosen to use a collection agency, Ocwen Federal Bank, to collect the $10,000 penalty it levied against the Plaintiff. Ocwen Federal Bank has contacted Plaintiff at least once in an effort to collect the penalty.

Plaintiff brought the instant action alleging that OFAC lacked the statutory authority to issue both the Travel Ban and the Medicine Restriction. In addition, Plaintiff seeks a declaration that the challenged regulations are unconstitutional because they

ORDER – 2

violate international law. He claims that OFAC's effort to collect the civil penalty against him is time-barred. He also seeks injunctive relief against OFAC's collection efforts.

### III. ANALYSIS

OFAC's purely legal challenges to Plaintiff's complaint are appropriately addressed in a Fed. R. Civ. P. 12(b)(6) motion to dismiss. The court may dismiss a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing the allegations of the complaint, all material allegations are accepted as true, as well as all reasonable inferences to be drawn from them. Id. A motion to dismiss is also properly granted where the plaintiff has no "cognizable legal theory" to tie the factual allegations into a claim upon which the court can grant relief. Id.

**A.     The Travel Ban Is Valid and Enforceable.**

The Travel Ban (like the Medicine Restriction) is the result of a series of executive and legislative actions that began when Iraq invaded Kuwait in 1990. On August 6, 1990, the United Nations Security Council issued Resolution No. 661, which called for member nations to restrict all economic transactions with Iraq. S.C. Res. 661(3)(c), U.N. SCOR, 45th Sess., 2933d mtg., U.N. Doc. S/RES/660 (1990). The Resolution exempted humanitarian aid from the scope of the sanctions it imposed. Id. (sanctions do not "includ[e] supplies intended strictly for medical purposes, and, in humanitarian circumstances, foodstuffs"). President George H.W. Bush then issued Executive Order 12,724, ordering the Secretary of the Treasury to promulgate regulations enforcing the sanctions called for in the Security Council resolution.[1] 50 Fed. Reg. at 33089. OFAC in turn issued regulations that included the Medicine Restriction and the Travel Ban.

---

[1] Executive Order 12,722, which was similar, was superseded by Executive Order 12,724. 50 Fed. Reg. at 33089.

ORDER – 3

In August of this year, the court in Office of Foreign Assets Control v. Voices in the Wilderness upheld the Medicine Restriction against Voices' contentions that OFAC lacked statutory and constitutional authority to issue it. 329 F. Supp. 2d 71 (D.D.C. 2004). Although Voices is not precedential authority, the court agrees with its analysis of the Medicine Restriction. The Voices court determined that the Executive Order authorized OFAC to issue the Medicine Restriction. Id. at 77-78. It also determined that the Executive Order itself was lawful, as it was authorized by the United Nations Participation Act ("UNPA"). Id. at 78. UNPA gives the President broad authority to take measures necessary to implement Security Council resolutions. It provides that:

> Notwithstanding the provisions of any other law, whenever the United States is called upon by the Security Council to apply measures which said Council has decided, pursuant to article 41 of said Charter, are to be employed to give effect to its decisions under said Charter, the President may, to the extent necessary to apply such measures, through any agency which he may designate, . . . regulate, or prohibit, in whole or in part, economic relations or rail, sea, air, postal, telegraphic, radio, and other means of communication between any foreign country or any national thereof or any person therein and the United States or any person subject to the jurisdiction thereof . . . .

22 U.S.C. § 287c(a). Although other federal statutes provide more limited presidential authority, and limit the President's ability to restrict humanitarian aid (e.g., 50 U.S.C. § 1702(b)), UNPA gives the President the authority to implement Security Council resolutions "[n]othwithstanding the provisions of any other law." 22 U.S.C. § 287c(a). In short, the court agrees with the Voices court that the Medicine Restriction was valid. The Voices analysis is equally applicable to the Travel Ban.

Plaintiff Sacks advances one argument that the Voices court did not expressly consider. He notes that Resolution No. 661 expressly excludes humanitarian aid from the scope of the sanctions to be imposed against Iraq. S.C. Res. 661(3)(c), U.N. SCOR, 45th Sess., 2933d mtg., U.N. Doc. S/RES/660 (1990) (sanctions do not "includ[e] supplies intended strictly for medical purposes, and, in humanitarian circumstances, foodstuffs"). UNPA, in turn, only authorizes presidential action "to the extent *necessary* to apply"

ORDER – 4

Security Council measures. 22 U.S.C. § 287c(a) (emphasis added). Plaintiff argues that regulations on travel for humanitarian purposes were not necessary to implement the Security Council Resolution, and thus even if the Executive Order authorized such measures, it did so without legal authority.

Although Plaintiff presents a compelling argument, it is an argument that ignores the decision of Congress to ratify the Iraqi sanctions regime. In the Iraqi Sanctions Act of 1990, Congress directed the President to "continue to impose the trade embargo and other economic sanctions with respect to Iraq and Kuwait that the United States is imposing" pursuant to Executive Order 12,724. Pub. L. No. 101-513, 104 Stat. 2047-2054 (codified at 50 U.S.C. § 1701). As Congress ratified the Executive Order on which the Travel Ban and Medicine Restriction were based,[2] the court must reject Plaintiff's argument that the Executive Order directed measures that were not "necessary" (under UNPA) to enforce Resolution No. 661.

**B.    Even if Plaintiff Has Standing to Challenge It, the Medicine Restriction is Valid and Enforceable.**

OFAC contends that Plaintiff does not have standing to challenge the Medicine Restriction, because OFAC has never contended that Plaintiff violated the Medicine Restriction. A plaintiff seeking to challenge a federal statute or regulation must generally prove that he has suffered or will suffer an injury, that the challenged statute or regulation caused the injury, and that the court can provide redress for the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992). OFAC argues that Plaintiff Sacks has suffered no injury as a result of the Medicine Restriction.

---

[2]The Iraqi Sanctions Act also required that any regulations promulgated after the Act (after November 5, 1990) were to be submitted to Congress. The challenged regulations were issued in January 1991, and it does not appear that they were submitted to Congress. Although OFAC may have neglected its statutory duties, this is not a basis for invalidating the challenged regulations. In re Surface Mining Regulation Litig., 627 F.2d 1346, 1365 (D.C. Cir. 1980).

ORDER – 5

Plaintiff does not contest that OFAC has not attempted to penalize him for violating the Medicine Restriction,[3] but Plaintiff contends that his admitted violation of the Medicine Restriction, coupled with OFAC's aggressive enforcement policy, means that the threat that he will be penalized is sufficient to confer standing. He notes that in its pre-penalty notice, OFAC not only alleged that Plaintiff violated the Travel Ban, but also that Voices, an organization to which Plaintiff belongs, violated the Medicine Restriction.

Although the parties present an intriguing argument on the standing issue, the court finds it unnecessary to resolve it.[4] Whether Plaintiff has standing to contest the Medicine Restriction or not, his challenge fares no better than his challenge to the Travel Ban. The Court's discussion of the statutory authority for the Travel Ban, supra, applies equally to the Medicine Restriction. The Medicine Restriction is a valid exercise of authority granted to OFAC through Executive Order 12,724 and the Iraqi Sanctions Act.

**C.      International Law Does Not Render the Regulations Unconstitutional.**

Plaintiff cites four sources of international law that he believes render the challenged regulations unconstitutional. Plaintiff does not explain how the United States Constitution incorporates these principles of international law. Nor does Plaintiff contest that international law is not binding on the United States unless the United States ratifies the law or the law is "self-executing." Whitney v. Robinson, 124 U.S. 190, 194 (1888).

---

[3] At oral argument, Plaintiff suggested that because one must necessarily "travel" in order to deliver food and medicine, the court can conflate the Travel Ban and the Medicine Restriction for standing purposes. The court disagrees. The two regulations proscribe different sets of conduct, and Plaintiff was penalized only for his travel-related expenditures in Iraq.

[4] The court has considered OFAC's late-filed motion to file a supplementary brief on the standing issue. (Dkt. # 28). The court has granted that motion, and has considered OFAC's arguments in the supplemental brief. Given the court's disposition of the issue, the court finds it unnecessary to grant Plaintiff an opportunity to respond to the supplemental brief.

ORDER – 6

The court finds that the international law upon which Plaintiff relies is not binding on the United States. The United Nations Convention on the Rights of the Child is not self-executing, and the United States Senate has declined to ratify it. <u>Flores v. Southern Peru Copper Corp.</u>, 343 F.3d 140, 165 (2d Cir. 2003). The same is true of the Geneva Convention Relative to the Protection of Civilian Persons in Time of War. <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774, 809 (D.C. Cir. 1984). Although the United States has ratified part of the Convention on the Prevention and Punishment of the Crime of Genocide, it also provided that the Convention creates no "substantive or procedural right enforceable by law by any party in any proceeding." 18 U.S.C. § 1092. Finally, the Universal Declaration of Human Rights is aspirational, not binding, and is not recognized as law in the United States. <u>Flores</u>, 343 F.3d at 165.

Customary international law also provides no defense for the Plaintiff. Plaintiff argues that even if the international law he cites has not been ratified or enacted in the United States, customary international law embodying the same principles is controlling. Even if the court accepts the Plaintiff's interpretation of the relevant customary international law, it cannot overlook the executive and legislative acts that expressly address sanctions against Iraq. Customary international law is not binding where there is a controlling legislative or executive act addressing the same subject. <u>Galo-Garcia v. INS</u>, 86 F.3d 916, 918 (9th Cir. 1996). International law does not provide Plaintiff with a legally cognizable claim against the challenged regulations.

**D.  OFAC's Effort to Collect Its Penalty From Plaintiff is Not Time-Barred.**

Plaintiff contends that OFAC's effort to collect its $10,000 penalty is barred by the five-year statute of limitations in 28 U.S.C. § 2462, which provides that:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

ORDER – 7

Plaintiff argues that OFAC's penalty arises from Plaintiff's November 1997 trip to Iraq, which was more than five years before OFAC initiated efforts to collect its penalty through Ocwen Federal Bank in August 2003.

Both parties assume that the phrase "proceeding for the enforcement of any . . . penalty" applies exclusively to proceedings to collect penalties like the one that OFAC imposed against him. The phrase has been interpreted to include any proceeding for the *imposition* of a penalty. 3M Co. v. Browner, 17 F.3d 1453, 1457-59 (D.C. Cir. 1994). The Browner court held that an agency's effort to impose a penalty is itself a "proceeding for the enforcement" of the penalty. Id. at 1459 (holding that a contrary result would be "inconceivable"); Federal Election Comm. v. Williams, 104 F.3d 237, 240 (9th Cir. 1996) (adopting the Browner view of 28 U.S.C. § 2462). OFAC commenced its proceeding to enforce its penalty against Plaintiff in December 1998, when it sent its pre-penalty notice to the Plaintiff. That proceeding concluded in May 2002, when OFAC issued its final penalty notice against Plaintiff. Regardless of which date is relevant, the court finds that OFAC commenced its enforcement proceeding within the five-year statute of limitations (which would not have run until November 2002).

**E.     OFAC's Regulations Bar the Use of a Collection Agency to Collect Its Penalty From Plaintiff.**

Although OFAC met the applicable statute of limitations for enforcing its penalty against Plaintiff, the court asked the parties to provide supplemental briefing to address whether OFAC is subject to restrictions on its effort to *collect* on that penalty. In particular, OFAC's own regulations provide that in the event that a person does not pay or make arrangements to pay an OFAC penalty within 30 days of its issuance, "[T]he matter shall be referred to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a Federal district court." 31 C.F.R. § 575.705.

ORDER – 8

OFAC has not referred the matter to the Department of Justice; it has chosen to use a collection agency to collect its penalty.[5]

Plaintiff argues that 31 C.F.R. § 575.705 unambiguously bars any method of penalty collection except reference to the Department of Justice for a civil suit. Although a court should ordinarily defer to an agency's interpretation of its own regulations, deference is not necessary where the language of the regulation is unambiguous. Ward's Cove Packing Corp. v. Nat'l Marine Fisheries Serv., 307 F.3d 1214, 1219 (9th Cir. 2002).

OFAC argues that the regulation is ambiguous, because while it might mandate a referral of a penalty to the Department of Justice, it is silent as to the availability of other remedies. Moreover, OFAC points out that both statutes and regulations generally applicable to the Treasury provide that multiple collection remedies are usually encouraged. 31 U.S.C. § 3718(a); 31 C.F.R. § 5.2(e). OFAC thus contends that the meaning of 31 C.F.R. § 575.705 is that OFAC may refer penalties to the Department of Justice or it may refer them to a collection agency.

Given the substantial deference owed to OFAC in interpreting its regulations, the court might be inclined to accept OFAC's position. See Alhambra Hosp. v. Thompson, 259 F.3d 1071, 1076 (9th Cir. 2001) (recognizing limitations on deference to agency interpretation). To do so, however, would be to ignore the 13 other regulatory subchapters that expressly state what OFAC asks the court to read into 31 C.F.R. § 575.705. For example, the Iraqi sanctions' closest neighbor in the Code of Federal Regulations is at 31 C.F.R. subchapter 585. That subchapter establishes sanctions for prohibited transactions with the Federal Republic of Yugoslavia. At 31 C.F.R. § 585.705, OFAC provides that if a person does not pay an OFAC penalty within 30 days, "[T]he

---

[5]Plaintiff urges the court to hold that the Federal Debt Collection Procedure Act ("FDCPA") (28 U.S.C. §§ 3001-3015) prevents OFAC from using a collection agency. OFAC correctly points out that 31 U.S.C. § 3718 authorizes OFAC to use a collection agency, although that agency must follow the FDCPA.

ORDER – 9

matter shall be referred for administrative collection measures or to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a Federal district court." This provision, or its substantial equivalent, is repeated in three other subchapters relating to OFAC prohibitions on transactions with regions in the Baltics (31 C.F.R. §§ 586.705, 587.705, 588.705), six other OFAC regulations on transactions with Angola (31 C.F.R. § 590.705), Iran (31 C.F.R. § 560.706), Afghanistan (31 C.F.R. § 545.705), the Sudan (31 C.F.R. § 538.705), Burma (31 C.F.R. § 537.705), and Cuba (31 C.F.R. § 515.718), as well as OFAC prohibitions on transactions in weapons of mass destruction (31 C.F.R. § 539.705), highly enriched uranium (31 C.F.R. § 540.705), and narcotics (31 C.F.R. § 536.705). The only regulations dictating that penalty collections "shall be referred" to the Department of Justice without mentioning administrative collection measures are the Iraq sanctions regulations at issue here, older regulations on transactions with Iran (31 C.F.R. § 535.705), and regulations on transactions with Libya (31 C.F.R. § 550.706).[6]

The court does not dispute that OFAC was authorized to enact regulations that permit it to use extra-judicial means of collection. The statute and regulation that authorize such means, however, are merely permissive. 31 U.S.C. § 3718(a) ("Under conditions the head of an executive . . . agency considers appropriate, the head of the agency may enter into a contract with a person for collection service to recover indebtedness owed"); 31 C.F.R. § 5.2(e) ("Use of multiple collection remedies allowed."). A review of OFAC regulations shows that OFAC often chooses to exercise that authority by issuing regulations that allow multiple avenues for penalty collection. For the Iraqi regulations in question, OFAC chose not to do so. Even giving substantial

---

[6]The court recognizes that changes in the political climate may have caused OFAC to rescind or amend some of the regulations listed above, or at least adopt different enforcement policies. Those changes would not, however, affect the court's analysis of the regulation in question.

ORDER – 10

deference to OFAC's interpretations of its regulations, the court finds that 31 C.F.R. § 575.705 requires OFAC to use the Department of Justice to collect penalties for violations of the Iraqi Travel Ban.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Dkt. # 8) in part, and DENIES it in part.

The only claim remaining in Plaintiff's complaint is its request for injunctive relief against OFAC's unlawful attempts to collect a penalty against him. It is not clear whether OFAC has any continuing control over Ocwen Federal Bank's efforts to collect OFAC's penalty from Plaintiff. To the extent that OFAC continues to exercise such control, the court ORDERS that OFAC is enjoined from using any means of collecting its penalty against Plaintiff that is inconsistent with this order. As Ocwen Federal Bank is not a party to this action, the court cannot enter an order enjoining it.

The court also notes that Plaintiff in his supplemental brief, and at oral argument, suggests that he has brought a claim contesting the amount of the penalty that OFAC levied. Although Plaintiff could possibly bring this challenge in the form of a claim under the Administrative Procedures Act or otherwise, the court finds that even a generous reading of the complaint shows that Plaintiff has brought no such claim. Even if there were such a claim, the court's decision that OFAC cannot use extrajudicial means to collect its penalty means that Plaintiff's objection to the amount of that penalty is not yet ripe for consideration by this court.

As there is no further relief to grant to either party, this action is DISMISSED.

Dated this 22nd day of October, 2004.

s/James L. Robart
_____
JAMES L. ROBART
United States District Judge

ORDER – 11